

Michael G. Rhodes					VIA E-FILE
(415) 693-2181
rhodesmg@cooley.com

May 31, 2011

The Honorable Donna M. Ryu
UNITED STATES MAGISTRATE JUDGE
1301 Clay Street
Oakland, CA 94610

RE: *Facebook, Inc. v. Various, Inc., et al.*, Case No.: 11-cv-01805-SBA (DMR)

Dear Magistrate Judge Ryu:

Pursuant to the Court's May 17, 2011 Order, the parties submit this joint letter addressing Plaintiff Facebook, Inc.'s request for expedited discovery.

I.  **Summary of Parties' Positions**

   A.  **Plaintiff's Position**

Plaintiff Facebook Inc., ("Facebook" or "Plaintiff") seeks limited expedited discovery from Defendants Various Inc., GMCI Internet Operations, Inc., Traffic Cat, Inc., and Friendfinder Networks, Inc., ("Named Defendants") for the purpose of identifying and serving Does 1-100 (the "Doe Defendants"), and facilitating a motion for preliminary injunction. More specifically, Facebook seeks leave of Court to serve the interrogatories, document requests and deposition notice attached to this letter as Exhibit A, and to issue subpoenas to third-parties, such as Domains By Proxy, with information regarding the identities of the Doe Defendants. This scenario presents a classic case of good cause to allow expedited discovery because: 1) Facebook is unaware of the identities and/or contact information for the Doe Defendants; 2) Plaintiff intends to file a motion for preliminary injunction; and 3) Named Defendants would not be unduly prejudiced by Facebook's request. Facebook hereby attests that the parties telephonically met and conferred on the issue discussed below on April 19, April 20, April 25, April 26, April 27, May 12 (two calls), May 19, May 23 and May 30, and that they were unable to resolve the dispute.

   B.  **Named Defendants' Position**

No good cause exists for Plaintiff's proposed, expedited fishing expedition to search for other entities to sue and to interfere with defendants' business references; and Plaintiff still has not satisfied applicable meet and confer obligations. Plaintiff's attestation that it "met and conferred" on six occasions before it even sent Named Defendants the proposed discovery requests is gratuitous on its face; and, as set forth below, subsequent conferences entailed Plaintiff's counsel refusing to accept anything other than capitulation to all but one of the oral and written discovery requests it seeks to propound. Since the filing of Plaintiff's initial motion, Plaintiff's counsel has ignored the Named Defendants' efforts to resolve outstanding discovery issues and – with one limited exception[1] – refused to back off any of the expedited discovery demands contained in its initial motion, including "all communications" between Named Defendants and everyone with whom they do business (within 15 days); third-party and

---

[1] When pressed, Plaintiff did agree to forego the profit information it was seeking on an expedited basis, acknowledging the information was not relevant to any potential emergency relief.

101 CALIFORNIA STREET, 5TH FLOOR, SAN FRANCISCO, CA 94111-5800  T: (415) 693-2000  F: (415) 693-2222  WWW.COOLEY.COM



May 31, 2011
Page Two

corporate representative depositions; and interrogatories. There is nothing "limited" about these proposed requests; and there is no emergency – and no pending motion for preliminary injunctive relief – that could or would justify varying from applicable discovery rules in this instance. All of the applicable factors, addressed more fully below, weigh in favor of this case proceeding on the normal discovery track and in reciprocal fashion.

II.  **Disputed Issue: Plaintiff Seeks Expedited Discovery on the Identity of the Doe Defendants and to Develop the Record for a Motion for Preliminary Injunction.**

   A.  **Plaintiff's Statement of Position**

   1.  **Factual Background**

Facebook offers the most popular and widely used social networking website in the world. Named Defendants operate an adult social networking website branded and promoted as "Face Book of Sex." As alleged in the Complaint, the FACE BOOK OF SEX mark is nothing more than an attempt by Defendants to hijack Facebook's fame for illicit financial gain.

Named Defendants' Face Book of Sex site, however, is just one part of their larger scheme to misappropriate the Facebook brand. Named Defendants also operate a widespread infringing affiliate network that pays, and provides infringing promotional materials to, third party website operators (the Doe Defendants). *See, generally,* Complaint (D.I. 1, Ex. D). The Defendants' affiliate program marketing materials encourage affiliates to "be part of the crowd cashing in on this new and exciting cobrand" and share in the profits generated by the Defendants' infringement of the Facebook brand: "[w]ith millions of *Adult FriendFinder* members worldwide, **as well as a highly recognizable name**, you'll generate great income on facebookofsex.com!"[2] These marketing materials provide Doe Defendants specific instructions on how to implement tools to redirect traffic to the FACE BOOK OF SEX site. The Doe Defendants use these tools to generate web traffic and revenue for Named Defendants' websites, and are paid by the Named Defendants based upon the volume of traffic.

In October of 2010, Facebook contacted the site's operator, Various Inc. ("Various") and requested that Various disable the site and cease using the FACEBOOK trademark. Various refused, and Facebook began an investigation of Various, the www.facebookofsex.com site, and several other similar domains that used the Facebook brand and redirected to the www.facebookofsex.com site. This investigation has revealed more than 100 domain names that appear to participate in the FACE BOOK OF SEX affiliate program. Absent discovery, however, Facebook was unable to learn the true identities of the owners of all of the infringing affiliates – many of the domain names were registered in the anonymous name of Domains by Proxy, and other listed owners appeared to be false identities. After a final effort to resolve the issue directly with the Named Defendants failed to produce a timely end to the infringing activities, Facebook filed this Action, naming the affiliates as Does 1-100 until discovery can determine their true identities.

After filing the Complaint, Facebook continued its effort to resolve this matter via settlement discussions. Facebook delayed filing this motion for more than a month based on

---

[2] Pursuant to the Court's May 17, 2011 Order, the parties attach only Plaintiff's proposed discovery requests. The parties will provide additional materials, including with regard to any meet and confer efforts, upon request by the Court.



May 31, 2011
Page Three

confidential representations made by the defendants during the parties' settlement talks that led Facebook to believe that the Defendants intended to quickly disclose the identity of the Doe Defendants and cease all infringing activity, including receipt of any traffic from infringing websites.  As the parties' discussions progressed, however, it became clear that the Named Defendants had no intention of providing this information or taking the steps necessary to dismantle its infringing affiliate network.  As a result, (1) the Named Defendants continue to use the FACEBOOK trademark in the www.facebookofsex.com domain, which ultimately directs users to one of Named Defendants' other websites: www.xmatch.com (**Adult Content**); (2) the Doe Defendants continue to use the FACEBOOK trademark in numerous domains and sites; and (3) the Named Defendants continue to benefit from accepting traffic from the Doe Defendants' infringing sites.

Given the unambiguous nature of the defendants' infringement and the ongoing irreparable harm to the Facebook brand, Facebook intends to bring a motion for preliminary injunction as soon as practicable.  In advance of that motion, Facebook seeks expedited discovery to allow it to (1) identify and serve the Doe Defendants within the time period contemplated by Rule 4(m); (2) ensure that the Doe Defendants are bound by any preliminary injunction issued by the Court; and (3) present the Court with a more complete record upon which to consider Facebook's motion for preliminary injunction.

## 2.     Good Cause Exists for Expedited Discovery

The Court may, for good cause, authorize discovery prior to the Rule 26(f) meeting of the parties.  *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002).  "Good cause exists 'where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party.'"  *In re Countrywide Fin. Corp. Derivative Litig.*, 542 F. Supp. 2d 1160, 1179 (C.D. Cal. 2008) (quoting *Semitool, Inc.*, 208 F.R.D. at 276).  Courts have found that "good cause" for early expedited discovery existed in cases where the identities of the alleged defendants are not known prior to the filing of the complaint.  *See Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980); *UMG Recordings, Inc. v. Doe*, No. C 08-1193 SBA, 2008 WL 4104214, at *3-5 (N.D. Cal. Sept. 3, 2008).  Good cause for expedited discovery can also exist in cases involving infringement or unfair competition in which a preliminary injunction is sought.  *See Pod-Ners, LLC v. N. Feed &  Bean of Lucerne, LLC*, 204 F.R.D. 675, 676 (D. Colo. 2002);  *Qwest Commc'ns  Int'l, Inc. v. WorldQuest Networks, Inc.*, 213 F.R.D. 418, 419 (D. Colo. 2003).

Good cause exists because without early and expedited discovery, Facebook cannot identify and serve the Doe Defendants within the 120-day time period of Rule 4(m).  Facebook's pre-filing investigation uncovered more than 100 affiliate websites using infringing domain names to refer traffic to the Named Defendants' sites.  Facebook's investigation indicates that the network of affiliates using infringing advertisements may be even more widespread.  But efforts to uncover the ownership of these sites have been frustrated by proxy service domain registration.  For example, the Doe Defendant that owns and operates the domain www.face-book-of-sex.com (**Adult Content**) currently lists Domains By Proxy, Inc., a company that helps domain owners mask their identities, as the registered owner of the domain.  *See* www.domainsbyproxy.com ("Your identity is nobody's business but ours.®").  Even for those sites with listed owners, such information is often inaccurate.  *See, e.g.,* Draft Report for the Study of the Accuracy of WHOIS Registrant Contact Information, ICANN, January 17, 2010,



May 31, 2011
Page Four

("only 23% of [WHOIS] records were fully accurate, but twice that number met a slightly relaxed version of the criteria. . .")[3].  Absent discovery, there is no way for Plaintiff to identify with certainty whether there are other infringing affiliate websites.

By virtue of their financial arrangements with the Doe Defendants, Named Defendants will necessarily have contact and payment information for these individuals or entities.  Facebook seeks early discovery of this information to amend its complaint and to expeditiously and efficiently pursue its motion for a preliminary injunction against all defendants.

Moreover, Facebook's complaint requests injunctive relief, and Facebook intends to file a motion for a preliminary injunction against all defendants.  Facebook seeks expedited discovery to accelerate resolution of its motion for a preliminary injunction by providing the Court a more complete evidentiary record regarding all infringing uses of the FACEBOOK trademark, including use by the Doe Defendants.  Courts have allowed expedited discovery when a plaintiff is seeking injunctive relief.  *See Ellsworth Assocs., Inc. v. United States*, 917 F. Supp. 841, 844 (D.D.C. 1996) (stating expedited discovery is particularly appropriate in cases where plaintiff is seeking injunctive relief); *Edudata Corp. v. Scientific Computers, Inc.*, 599 F. Supp. 1084, 1088 (D. Minn. 1984) (holding that expedited discovery should be granted because further development of the record before the preliminary injunction hearing would better enable the court to judge the parties interests and respective chances for success on the merits); *see also Am. Legalnet Inc. v. Davis*, 673 F. Supp. 2d 1063, 1066-67 (C.D. Cal. 2009).

Here, details regarding the Named Defendants' affiliate network cannot be easily ascertained from publicly available information.  Absent discovery on the manner in which the affiliate program is implemented and maintained, Plaintiff and the Court cannot fully determine the most effective and reasonable method for enjoining all infringing uses of the FACEBOOK mark attributable to the affiliate network.  Expedited discovery on the Named Defendants' direct infringement of the FACEBOOK mark will also allow Facebook to present a more complete evidentiary record when making its motion for preliminary injunction, by allowing Facebook to present direct rather than circumstantial evidence on factors such as the Named Defendants' intent in selecting the FACE BOOK OF SEX mark, and whether the Named Defendants have encountered any instances of actual confusion.

### 3. Expedited Discovery Will Not Unduly Prejudice Defendants.

In determining whether a party will be unduly prejudiced by a request for expedited discovery, courts consider the reasonableness and breadth of the request, as well as when the party was put on notice of the potential lawsuit.  *Semitool,* 208 F.R.D. at 276-77.  Facebook's requests are both narrow and reasonable.  Facebook is not requesting all documents relevant its claims.  Instead, Facebook is seeking a small subset of information necessary to build the evidentiary record for Facebook's preliminary injunction motion, and to identify and serve the Doe Defendants.  Named Defendants received notice of these claims long before this complaint was filed; they cannot now claim to have been caught unaware by this lawsuit.

Any burden placed on Named Defendants as a result of Facebook's request is heavily outweighed by the Plaintiff's interest in expeditiously ending the defendants' infringing activities.  The Named Defendants created the need for this early discovery by setting up a blatantly infringing website and establishing strong incentives for third-parties to infringe Facebook's

---

[3] *Available at* http://www.icann.org/en/compliance/reports/whois-accuracy-study-17jan10-en.pdf.



May 31, 2011
Page Five

Mark.  Having enjoyed the financial benefits of establishing this network, defendants cannot complain that the burden associated with dismantling the network is somehow undue.

### 4. The Defendants' Proposed Voluntary Actions Are Insufficient.

During the meet and confer process, Named Defendants proposed, as a compromise, that they would voluntarily suspend any infringing affiliate identified by Facebook or that otherwise becomes known to the Named Defendants during the ordinary course of business.[4] If, after suspension, the affiliate continues to use the FACEBOOK mark, the Named Defendants would provide identification information about the affiliate to allow Facebook to take enforcement action.  This proposed compromise is inadequate for two reasons.

First, the proposed compromise provides Facebook with no reliable means for identifying infringers who are currently unknown to Facebook but who continue to be paid to refer traffic to the Named Defendants' sites.  As mentioned above, Facebook's pre-suit investigation identified more than 100 affiliates that use an infringing domain and/or mark to refer traffic to the Named Defendants' websites.  Several previously unknown infringing affiliate sites, such as www.face-book-of-sex.com (**Adult Content**), have come to Facebook's attention since filing the complaint, and there are almost certainly numerous other infringing affiliate sites that have yet to be discovered.  The Named Defendants, by virtue of their financial relationship with the Doe Defendants, are the only parties with the information necessary to ensure that all affiliate infringement can be quickly identified and enjoined, thus minimizing the ongoing irreparable harm to Facebook.

Second, the proposed compromise provides no way for Facebook to identify and serve any of the Doe Defendants that voluntarily cease using the FACEBOOK mark.  Under this proposal, a subset of the Doe Defendants will not be identified to Facebook for months, rendering it difficult or impossible to achieve service within the 120-day period of Rule 4(m).  It may also require the Court to hear two separate motions for preliminary injunction: one to enjoin the defendants who are identified and served during early discovery, and one for any defendants who are identified during regular discovery.

Finally, shortly after Facebook filed its complaint, most of the content was removed from the www.facebookofsex.com site, leaving a login screen for existing members to log in to their accounts.  The Named Defendants have also "suspended" certain infringing affiliates.  These changes do not alleviate the need for a preliminary injunction because the Named Defendants' infringing activity has not ceased – they continue to use the FACEBOOK mark in their domain to drive traffic to www.xmatch.com (**Adult Content**), another website operated by the Named Defendants.  The Named Defendants also continue to serve content to infringing affiliates, such as www.facebook-webcams.info (**Adult Content**), and accept traffic from sites with infringing domains, such as www.fbookofsex.com (**Adult Content**), which redirects to Defendant Various' www.sexbook.com (**Adult Content**) website.  Moreover, the Defendants have provided no

---

[4] At 12:15 p.m. on the deadline for this letter to be submitted, Named Defendants proposed, for the first time, a stipulation that they would "be amenable to responding to limited expedited written discovery[.]" The Named Defendants provide no details as to what such discovery would entail, nor did Named Defendants make their proposal during the numerous meet and confer calls that preceded this motion. Facebook is, of course, willing to accept any stipulation that will allow Facebook to identify the Doe Defendants and enjoin the ongoing infringement in a manner that does not place on Facebook the entire burden of identifying all of the Named Defendants' affiliates.



May 31, 2011
Page Six

guarantee that they will not resume their prior more extensive infringing activities.  *See Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132, 1135-36 (9th Cir. 1986) (voluntary cessation of infringing activity not grounds for denial of preliminary injunction absent some guarantee that infringing activity would not restart).  During the meet and confer process leading up to this letter, the parties discussed but were unable to reach agreement on a stipulated preliminary injunction.  Short of a stipulated preliminary injunction, Facebook intends to seek preliminary relief from the Court, and expedited discovery will help ensure that any resulting preliminary injunction covers all of the defendants' use of the FACEBOOK trademark.

    **B.**    **Defendants' Statement of Position**

On May 17, 2011, Plaintiff's initial motion for expedited discovery was denied out of hand for failure to meet and confer or comply with Local Rules.  Since that time, Plaintiff's counsel has refused to compromise its proposed discovery requests and rejected several proposals by Named Defendants.  Plaintiff's request for expedited discovery should again be denied for failure to comply with meet and confer obligations.

In addition, the five commonly-considered factors weigh heavily against expedited discovery in this case.  *See American LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1066 (C.D. Cal. 2009).  First, and perhaps most importantly, there is no pending preliminary injunction motion in connection with which Plaintiff seeks expedited discovery – or against which Plaintiff's proposed discovery may be evaluated.  Plaintiff's counsel cryptically offers only that Plaintiff may file such a motion later this year.  Second, the discovery requested is exceedingly overbroad and includes document requests, interrogatories, unidentified party and third party depositions, and the deposition of a Named Defendant corporate designee, all before Plaintiff answers the counterclaim or a Rule 26(f) conference has been held.  Third, the stated purpose of Plaintiff's discovery is to look for other third-parties whom Plaintiff might sue and from whom Plaintiff may seek injunctive relief.  The only potentially viable basis for seeking preliminary injunctive relief from the Named Defendants – the use of the facebookofsex.com website – has been mooted by Traffic Cat's voluntary decision to disable the site.  Fourth, the requested discovery would place an undue burden on the Named Defendants, as it calls for limitless document production of sensitive information and depositions, all within a two week period and before the pleadings are set and without contemplating a protective order.  Fifth, the proposed discovery requests could not be more premature and would likely lead to duplicative productions and depositions once the issues in the case have been set.  In sum, Plaintiff's request for expedited discovery should be denied.

    **1.**    **Factual Background**

FriendFinder is a pioneer in the field of Internet-based social networking, operating several of the most heavily-trafficked websites in the world.  Its website services include, but are not limited to, social networking, online personals, live and recorded video, online chat rooms, instant messaging, photo and video sharing, blogs, message boards, email and premium content websites.

In connection with their operations and marketing efforts, certain of the Named Defendants, including FriendFinder, enter into contracts with other independent, third-party website operators ("Operators") to encourage the flow of webtraffic to their websites.  The Operators are paid a commission based on "clickthrough" rates, but are at all times responsible for the content and maintenance of their own sites.  To that end, Operators  sign an "Affiliate



May 31, 2011
Page Seven

Agreement" ("Agreement"), which outlines the terms of the contractual relationship. The Agreement specifies, among other things, that each Operator is "solely responsible for the development, operation and maintenance of your site and for all materials that appear on your site" and that "[n]othing in this Agreement shall be construed to create any partnership, joint venture, agency, franchise, sales representative, or employment relationship between the parties."

Since at least 2009 through April 2011, Traffic Cat operated an online website for adults referred to as "Face Book of Sex" and located at facebookofsex.com. Since at least October 2010, Plaintiffs and Named Defendants' counsel have been in discussions regarding the other's use of certain trademarks. These discussions primarily concerned Traffic Cat's use of "face book" in connection with the operation of the facebookofsex.com website and Plaintiff's use of FriendFinder's "FriendFinder" mark. Plaintiff uses "Friend Finder" as the name of a service on its social networking website, facebook.com, for the purpose of expanding its userbase by trolling for email addresses and contact information from its existing users. As addressed more fully in the Named Defendants' counterclaim, the feature has raised privacy concerns, brought negative publicity to the "FriendFinder" mark, resulted in government action, and caused confusion among FriendFinder's customers.

The parties had been attempting to negotiate a resolution of their trademark issues for months when Plaintiff preemptively filed this suit. Following the filing of Plaintiff's complaint, the parties continued to negotiate.[5] In a show of good faith, Traffic Cat voluntarily – without admission of wrongdoing or conceding that "facebook" was anything but a generic descriptor – took down the facebookofsex.com website, thus mooting the principal concerns raised in Plaintiff's complaint, and suspended all links directing traffic to that site. *See* http://facebookofsex.com/go/page/deactivated_site. The Named Defendants further suspended links from known Operators using "facebook" (Norberg Decl., Ex. B), banned such Operators, and admonished Operators that anyone using "facebook" in a URL to send traffic to the Named Defendants' sites would forfeit all payments. Despite the voluntary cessation of the allegedly infringing site, Plaintiff's counsel indicated that Plaintiff intended to pursue undisclosed injunctive relief and expedited discovery regarding, among other things, the Operators.

On May 6, 2011, counsel for FriendFinder asked for clarification of Plaintiff's intentions with regard to expedited discovery. Five days later, on May 12, counsel for Plaintiff finally called counsel for FriendFinder to announce that Plaintiff was filing a motion for expedited discovery that same day. Plaintiff denied counsel for the Named Defendants the opportunity to speak with their client about the proposed scope of discovery, refused to consider narrowing the scope of any of the discovery requested, and declined to delay the filing of their proposed motion – which they refused to share with defense counsel – for even a day. Late in the evening, Plaintiff filed the instant motion. On May 17, 2011, the Court denied Plaintiff's motion.

Since May 17, 2011, Plaintiff has rejected all efforts at compromise by Named Defendants, including the proposed stipulation set forth above; their voluntary agreement to

---

[5] Named Defendants object to Plaintiff's characterization of events and reliance on confidential settlement negotiations in its submission. To the extent the Court deems it relevant and appropriate to consider, the Named Defendants are prepared to submit contemporaneous documents and affidavits regarding the substance of these settlement negotiations, which will demonstrate Plaintiff has mischaracterized them.



May 31, 2011
Page Eight

identify upon request by Plaintiff any third-party Operator who continues to use "facebook" to drive traffic to any of Named Defendants' websites; and their attempts to schedule a settlement conference. All of these overtures have been rebuffed, as Plaintiff has insisted unilaterally on proceeding with all of its requested expedited discovery.

### 2. The applicable factors confirm Plaintiff's request for expedited discovery should be denied.

***Plaintiff has not complied with its meet and confer obligations and has rejected reasonable compromises.*** The meet and confer requirement minimizes the burden imposed on the Court and ensures that the Court's limited resources are only spent on specific, crystallized disputes. *Ellis v. Woodford*, No. C 05-2110 SI, 2007 WL 1033477, *1 (N.D. Cal. Apr. 4, 2007) ("The court does not have enough time or resources to oversee all discovery, and therefore requires that the parties present to it only their very specific disagreements.") "A good faith attempt to meet and confer requires more than sharply worded letters and emails between counsel." *Watts v. Allstate Indem. Co.*, No. 2:08-cv-01877 LKK KJN, 2010 WL 4225561, *4 (E.D. Cal. Oct. 20, 2010). Here, Plaintiff's own submission confirms that it has offered no compromise whatsoever in its demands for expedited discovery. This is why the format of this correspondence does not comport with the Court's May 17, 2011 Order and why Plaintiff's request should simply be denied.

***Expedited discovery is not indicated in the absence of a pending preliminary injunction motion***. *See, e.g., Momenta Pharmaceuticals, Inc. v. Teva Pharmaceuticals Industries Ltd.*, No. 10–12079–NMG, 2011 WL 673926, *2–*3 (D. Mass. Feb. 18, 2011) ("the fact that there was no pending preliminary injunction motion weighed against allowing plaintiff's motion for expedited discovery."). Plaintiff has not filed a motion for preliminary injunction because there is no conduct at issue by any Named Defendant to enjoin. Plaintiff's statements that the Named Defendants are continuing the allegedly infringing conduct are misleading at best; the facebookofsex.com website has been deactivated and, as Plaintiff is well aware, will be disabled entirely as soon as pre-paid credit card memberships expire, consistent with consumer protection concerns. Plaintiff concedes that none of the Named Defendants are using the term "facebook" in their operations and thus there is no risk of harm on these facts. *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

Moreover, Plaintiff has waited far too long – two and a half years since the allegedly infringing conduct and six months since the parties first started talking – to claim an immediate threat of irreparable harm that would justify an injunction, much less expedited discovery before the pleadings are set. *See, e.g., Protech Diamond Tools, Incorporation v. Liao*, No. C 08-3684 SBA, 2009 WL 1626587, *6 (N.D. Cal. June 8, 2009). Plaintiff cannot sit on its rights and then claim there is an "emergency" more than two years later. *See Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, 13 F. Supp. 2d 417, 419 (S.D.N.Y. 1998). Plaintiff's refusal to consider compromise further "undermines its claim that Court-ordered expedited discovery is necessary."[6] *Momenta*, 2011 WL 673926 at *2–*3.

---

[6] Named Defendants object to Plaintiff's characterization of their discussions and proposals in footnote 5. Defense counsel participated in a conference call with Plaintiff's counsel on Monday, May 31st, and on prior occasions, in which they confirmed their client would provide discovery of third-party Operators who continued to use "face book," ban any Operators who continued to do so, and stipulate to



May 31, 2011
Page Nine

***Plaintiff's demands for expedited discovery serve no legitimate purpose.***  The scope and timing of Plaintiff's expedited discovery demands further compel the conclusion that they serve no proper purpose and are instead an improper fishing expedition calculated to harass and intimidate the Named Defendants and their business references.  As part of active discussions that began in October 2010, the Named Defendants took significant actions believing the parties to be working toward mediation.  Without reciprocating these efforts to resolve the parties' competing infringement claims amicably, during the same week that defendant FriendFinder began a widely reported initial public offering and while the Named Defendants were preparing their responsive pleading and counterclaims, Plaintiff informed counsel for FriendFinder that it was seeking expedited discovery immediately, refused to consider any narrowing or compromises, and prevented any meaningful opportunity to meet and confer before running to court.  This factor weighs heavily in favor of denying Plaintiff's motion.

***Plaintiff's expedited discovery requests are overbroad and unduly burdensome.***  There is no good cause for overbroad expedited discovery under any circumstance.  *American Legal Net*, 673 F. Supp. 2d at 1087.  Indeed, in a trademark case that Plaintiff has cited, the court rejected expedited discovery in significant part because of its improper scope.  *See Qwest Communications Intern., Inc. v. WorldQuest Networks, Inc.*, 213 F.R.D. 418, 420-21 (D. Colo. 2003) ("The breadth of these discovery requests has a significant bearing on the court's decision to deny the motion for expedited discovery.").  As in *Qwest*, Plaintiff's actual discovery requests belie Plaintiff's patently inaccurate description of them as "narrow" or limited.  *See, e.g.,* Document Request No. 4, Rule 30(b)(6) Deposition Notice.  To be sure, Plaintiff's written discovery ignores corporate forms and is addressed indiscriminately to the Named Defendants, though only defendant Traffic Cat is identified as the operator of the allegedly infringing site.  These overreaching, premature demands have little nexus to any alleged infringement of the FACEBOOK mark and certainly no relevance to an unfiled preliminary injunction motion.

Plaintiff is seeking discovery, including "all documents," relating to every website the Named Defendants operate and every communication with any Operator with whom the Named Defendants do business, all within a matter of fifteen days and without any protective order in place to safeguard this confidential business information.  According to Plaintiff, it will then investigate these people and depose them to determine whether there is a basis to bring claims against them and pursue preliminary remedies for alleged trademark infringement.  This is the epitome of a prohibited fishing expedition.  *See, e.g., American LegalNet*, 673 F. Supp. 2d at 1069 (rejecting expedited discovery "based solely on speculation that these companies may be assisting defendants in selling information allegedly misappropriated…"); *Samsung SDI Co., Ltd. v. Matsushita Elec. Indus. Co., Ltd.*, No. CV 05-8493-AG(SHx), 2007 WL 4357552, *5 (C.D. Cal. June 25, 2007).  In contrast, Plaintiff has refused any suggestion of reciprocal discovery regarding its likelihood of success on the merits.  Further, because Plaintiff's proposed

---

maintaining the status quo pending trial.  During those conversations, Named Defendants' counsel explained that the Operators were third-parties with whom Named Defendants do business – and not "affiliates" in the legal sense – and that Named Defendants did not control or direct their content.  Plaintiff's counsel has flatly refused such a compromise and insisted upon both oral and written discovery of and from everyone with whom the Named Defendants does business, regardless of any relation to "face book."  The requested information implicates confidentiality concerns as well as interfering with the Named Defendants' business relationships, including with parties who have no nexus whatsoever to this suit, *i.e.* non-"face book" using Operators who referred traffic to sites other than facebookofsex.com.



May 31, 2011
Page Ten

expedited discovery is in no way targeted to the issues that might be relevant to a potential motion for preliminary injunction, it should be denied on the basis of this factor alone. See *American LegalNet*, 673 F. Supp. 2d at 1069 ("Clearly, the discovery plaintiff seeks is not 'narrowly tailored to obtain information relevant to a preliminary injunction determination' and instead goes to the merits of plaintiff's claims in this action. Thus, plaintiff has not established good cause…").

**Plaintiff's overbroad expedited discovery would be extremely burdensome and prejudicial at the very outset of this case.** With respect to the burden and timing considerations, the fourth and fifth relevant factors identified in *American LegalNet*, 673 F. Supp. 2d at 1067, the burden on the Named Defendants to respond would be enormous. The notion that Plaintiff's proposed discovery is "narrow" and "reasonable" is belied by the requests and deposition notices themselves. Plaintiff's virtually limitless demands for "all communications" with business references also come well in advance of the typical discovery process. They seek electronically stored information; proprietary information and confidential information regarding Named Defendants' operations; and highly confidential information regarding the Operators with whom the Named Defendants do business. And, as Plaintiff's counsel readily admits, this is just the first round of what will inevitably be a duplicate exercise.

III. FINAL PROPOSED COMPROMISE

    A. Plaintiff's Position

During the meet and confer process, Facebook stated that its requests for expedited discovery were negotiable, and that Facebook would consider any proposal to narrow the requests, so long as the narrowed requests ensured that Facebook would be able to identify the Doe Defendants and develop the record in advance of Facebook's motion for preliminary injunction. The Named Defendants did not make any proposal to narrow Facebook's requests.

    B. Defendants' Position

As discussed more fully above, Plaintiff has neither demonstrated good cause for the discovery requested nor complied with meet and confer obligations prior to raising these issues with the Court. Counsel's suggestion that Plaintiff would "consider" any proposal by Named Defendants is accurate only in the sense that Plaintiff has rejected each compromise proposed by Named Defendants and refused even to meet with them to discuss resolution. Accordingly, the Named Defendants respectfully request that the Court deny Plaintiff's overbroad, premature expedited discovery request and instead set this case for an early settlement conference in accordance with Local Rule 16-8.

Sincerely,

| | |
|---|---|
| **COOLEY LLP** | **KATTEN MUCHIN ROSENMAN LLP** |
| /s/Michael G. Rhodes_____ | /s/ Floyd A. Mandell_____ |
| | for FriendFinder Networks, Inc., Various, |
| Michael G. Rhodes | Inc., Traffic Cat, Inc., and |
| | GMCI Internet Operations, Inc. |
| for Plaintiff Facebook, Inc. | |